[No. 16662. Department One. December 9, 1921.]

BLANC'S CAFE, INCORPORATED, *Respondent*, v. J. C.
COREY *et al.*, *Defendants*, UNIVERSITY STREET
IMPROVEMENT COMPANY, *Appellant*.[1]

LANDLORD AND TENANT (9)—LEASE—CONDITIONAL DELIVERY OF
LEASE. A lease of premises cannot be said to have been condition-
ally delivered from the fact that the lessee notified the lessor in
writing that, in consideration of the delivery of the lease, the lessee
would not hold the lessor liable if the present tenants were not out
by a given date, but were allowed to remain over a few days longer.

SAME (39-1) — LEASE — ABANDONMENT BY TENANT — WAIVER OF
RIGHTS—EVIDENCE—SUFFICIENCY. A lessee who has been prevented
from taking possession of leased premises by reason of restrictive
clauses in other leases by the lessor cannot be said to have aban-
doned the lease, or to be chargeable with laches, where it delayed
for eight months in bringing a possessory action for the premises
and, on the dismissal of its action without prejudice, waited an-
other six months before instituting action, in view of the fact that
the lessee refused to receive back the rents and money deposits
made by it and retained the keys to the leased premises.

SAME (52)—ACTION FOR FAILURE TO DELIVER POSSESSION—EVI-
DENCE—ADMISSIBILITY. Evidence of the financial condition of a
lessee for the purpose of showing its inability to occupy premises
leased to it is immaterial in an action by the lessee for possession.

SAME (52, 53)—ACTION FOR POSSESSION—DAMAGES—RECITALS IN
JUDGMENT. The right of a lessee, if any it have, to institute an ac-
tion for damages, following a possessory action against the lessor
for the premises, is fully protected by a recital of the judgment in
the possessory action that the question of plaintiff's damages was
not presented to or considered by the court.

Cross-appeals from a judgment of the superior court
for King county, Ralston, J., entered April 29, 1921,
upon findings in favor of the plaintiff, in an action in
ejectment, tried to the court. Affirmed.

*Ballinger, Battle, Hulbert & Shorts* and *Chadwick,
McMicken, Ramsey & Rupp*, for appellant.

*Wright, Kelleher, Allen & Hilen*, for respondent.

[1]Reported in 202 Pac. 266.

BRIDGES, J.—This was an action for the possession of the second floor of a certain building in the city of Seattle. The case was tried by the court without a jury, and the defendant University Street Improvement Company has appealed from a judgment in favor of the plaintiff.

We find the controlling facts to be as follows: On August 18, 1917, appellant, University Street Improvement Company, made and delivered to the respondent, Blanc's Cafe, Incorporated, its written lease covering the second floor of a certain building. This lease, by its terms, was to expire on the 4th day of February, 1923, and the premises were to be used only for restaurant or cafe purposes. At the time of the execution and delivery of the lease to respondent, one Kitchen was in possession of a part of the leased premises by virtue of an unrecorded written lease which, according to its terms, was to expire on September 30, 1918. The respondent's lease did not in any manner mention the Kitchen lease. However, before the respondent's lease was delivered, it addressed a letter to appellant's rental agent wherein it was stated that, in consideration of the delivery of the lease, respondent would not hold the appellant liable "in the event that the present occupants (Kitchen) of those premises are not out by September 1, 1917, and are allowed to remain over a few days longer. Of course, it is understood that you will use every means possible to gain possession by that date, but in the event that the tenants are not out by that date, we herewith agree not to hold you liable." Prior thereto the appellant had made arrangements by means of which Kitchen had agreed to vacate the premises not later than September 15, 1917.

Very shortly after the delivery of the lease to the

respondent, appellant discovered that a lease which it had previously made to a portion of the ground floor of the same building to Wells and Skarlatos contained a provision that no part of the building, during the life of the lease, should be let to any person for restaurant or cafe purposes. The Wells and Skarlatos lease was to expire on March 1, 1919, but contained a clause providing for two years' extension. Apparently, at the time of making respondent's lease, appellant had forgotten that the Wells and Skarlatos lease prohibited any other restaurant or cafe in the building. It at once informed respondent of the restrictive clause in the Wells and Skarlatos lease, and it was agreed between the parties that appellant should make an effort to in some way reconcile Wells and Skarlatos to respondent's lease. Being unable to accomplish anything in this direction, the appellant, on August 30, 1917, informed respondent that it would be unable to live up to the terms of the lease to it, and at the same time tendered back to respondent such deposits and rent money as it had at that time paid. These tenders were refused. Finding itself in the situation outlined, the appellant made no further effort to procure Kitchen to vacate the premises occupied by him.

In April, 1918, respondent brought suit against appellant and Kitchen for possession of the leased premises. The answer of the defendant Kitchen disclosed that his lease did not expire until December, 1918. Thereupon respondent voluntarily dismissed its suit without prejudice to further action. After the Kitchen lease had expired, and in December, 1918, respondent brought this suit for possession. At the first trial it was nonsuited and judgment of dismissal was entered. From that judgment it appealed to this court, which reversed the judgment of dismissal and returned the

case for trial. *Blanc's Cafe v. Corey*, 110 Wash. 242, 188 Pac. 759. Before the trial of the case, all of the defendants except the appellant filed disclaimers. At the time of the trial, the Wells and Skarlatos lease had expired.

Appellant's first point is that the lease to respondent was conditionally delivered, that is to say, it was delivered on condition that Kitchen would vacate the premises occupied by him. We do not think there is any merit in this contention. It is based largely upon the letter above quoted, written by the respondent to appellant's rental agent. In the first place, respondent's letter cannot be construed as a conditional delivery of the lease. It amounts to nothing more than an agreement on its part not to hold the appellant in damages simply because Kitchen may not vacate the premises at the exact time therein mentioned. It is plain that, at the time respondent's lease was made and delivered, it was understood between it and the appellant that the latter already had some arrangements or could make some arrangements with Kitchen for the vacation of the premises occupied by him, and it was contemplated that there would be some little delay in accomplishing this vacation. The sole purpose of the letter was to relieve appellant from any liability during the short period during which it was contemplated Kitchen would occupy the building after September 1st. Besides, this action was not brought until after the Kitchen lease had expired, and presumably he had moved from the premises. We hold that the respondent's lease was delivered to it unconditionally.

It is next contended by appellant that respondent has so conducted itself as that it either abandoned the lease or considered it terminated, or is estopped to

now claim any rights under it. It bases its argument largely on the facts that within a month after the delivery of the lease it informed respondent that it would be unable to carry out the lease on account of the restrictive clauses of the Wells and Skarlatos lease, and that respondent did not then insist upon its rights under the lease, but discussed with appellant ways and means to avoid the objections being made by Wells and Skarlatos, and for a time considered certain propositions made by the appellant concerning other buildings in which respondent might do business, and that the latter did not take any action to indicate that it was insisting upon its lease until it brought the first action in April, 1918, and that, after its first action was dismissed in June, 1918, it took no other steps to enforce its rights until this action was commenced in December, 1918. We cannot agree that such conduct on the part of respondent amounted to an abandonment of the lease or an estoppel to claim any rights thereunder. We do not find from the testimony that at any time the respondent, either expressly or by necessary implication by word or act, led the appellant to believe that it would not insist upon its lease. The mere fact that it advised with appellants concerning the Wells and Skarlatos lease, and that it did not bring its suit for some six months after appellant had said it could not live up to the terms of the lease, would certainly not have any reasonable bearing on the proposition of abandonment or laches. The fact that respondent refused to receive back the rents and money deposits made by it; the fact that it still retained the keys to the leased premises; the fact that it brought its first suit within some six or eight months after appellant had asserted it could not give possession, and the fact that it brought its second suit within some six months

after the dismissal of the first action, would be amply sufficient to deny any intention upon its part to abandon or waive its rights under the lease.

The appellant was probably unfortunate in making the lease to the respondent without protecting itself against the previous lease, but this cannot be any reason why respondent should not try to enforce its rights under its lease. It seems to us that no extended argument is necessary upon this question. A recital of the facts themselves would seem to show that appellant has wholly failed to prove laches or abandonment by the respondent.

The appellant offered to prove that the respondent does not maintain this action in good faith, and that because of its financial embarrassment it would be wholly unable to go into possession of the leased premises, even though the same were tendered to it by the appellant. We think the trial court was right in rejecting this class of testimony. The respondent had its rights, if any, under the lease, and by the terms of that instrument it was manifestly entitled to possession of the leased premises. Under these circumstances, its financial condition could not be material.

The respondent has cross-appealed and insists that this was purely a possessory action and in no manner one for damages, and that the judgment of the trial court should have recited that fact, so as to reserve to respondent any right of action which it might have against the appellant for damages on account of being deprived of the leased premises for a long period. Respondent argues quite extensively that it is entitled, if it so chooses, to maintain an independent and separate action for such damages. We do not find it necessary to decide whether it can maintain such action. Assuming that it can, then we have no doubt that the

judgment of the court is amply sufficient to protect it in this regard, for it recites that "the question of plaintiff's damages, if any, was not presented to or considered by the court." The judgment is affirmed.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.